# EXHIBIT "1"

COPY

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA.

IN THE SUPERIOR COURT OF SPALDING COUNTY
STATE OF GEORGIA

LEAH M. SINGLETON,                )
                                  )
        Petitioner,               )
                                  )
v.                                )
                                  )
DWAYNE C. SINGLETON,              )
                                  )
        Respondent.               )
                                  )

2015 MAR 20  AM 8 07

BY D. Preston

CIVIL ACTION    MARCIA L. NORRIS, CLERK

FILE NO. 15 V. 340 SEB

## PETITION FOR CITATION OF CONTEMPT

COMES NOW, Petitioner, Leah M. Singleton (hereinafter "Petitioner"), and hereby files this

*Petition for Citation of Contempt* against Respondent, Dwayne C. Singleton (hereinafter

"Respondent"), showing the Court as follows:

1.

Petitioner and Respondent were formerly husband and wife with one (1) minor child born as

issue of said marriage, to wit: Layne Morgan Singleton, born in 2005 (hereinafter the "Minor

Child"). Respondent is subject to the jurisdiction and venue of this court and can be served at 23

Stillwater Trace, Griffin, Spalding County, Georgia.

2.

On July 16, 2014, a *Final Judgment and Decree of Divorce* (hereinafter the "Final Decree")

was entered in the divorce action styled *Leah M. Singleton v. Dwayne C. Singleton*, Superior Court of

Spalding County, Georgia Civil Action File Number 14V-340 (WES) (hereinafter the "Divorce

Action"). (A copy of the Final Decree is attached hereto as Exhibit "A.") The Final Decree

incorporated a *Settlement Agreement* between the parties dated May 27, 2014 (hereinafter the

"Settlement Agreement") which was filed with the court on May 30, 2014 in the Divorce Action. (A

copy of the Settlement Agreement is attached hereto as Exhibit "B.")

3.

Count I

Medical Insurance and Healthcare Expenses for Minor Child

Paragraph 3(a)(1) of the Settlement Agreement and Paragraphs 3(k) and 3(n) of the Final

Decree require Respondent to maintain medical insurance for the Minor Child and to be responsible

for and pay all of the Minor Child's health care expenses not covered and/or paid by insurance.

4.

Petitioner has been advised by the Minor Child's physician that the Minor Child's

medical insurance is inactive. As such, Respondent has willfully and contemptuously violated the

Settlement Agreement and Final Decree.

5.

Count II

Stillwater Trace Property

Paragraph 5(a) of the Settlement Agreement and Paragraph 8 of the Final Decree give

Respondent sole title to the improved real property located at 23 Stillwater Trace, Griffin, Spalding

County, Georgia (hereinafter the "Stillwater Trace Property").

6.

Paragraphs 5(b)(1) of the Settlement Agreement and Paragraph 8 of the Final Decree require

Respondent to be responsible for, pay, and forever indemnify and hold the Petitioner harmless from

the mortgage secured by the Stillwater Trace Property.

7.

Paragraph 5(c) of the Settlement Agreement and Paragraph 8 of the Final Decree require

Respondent to endeavor in good faith to procure Petitioner's release from the mortgage secured by

the Stillwater Trace Property.

8.

Paragraph 5(f) of the Settlement Agreement provides:

> In the event that the [Respondent] defaults on any of the obligations
> identified in subparagraphs (b)(1), (b)(2), (b)(4), and (b)(5) above to this
> Paragraph 5 and fails to cure said default prior to the expiration of thirty (30)
> days from the date of the default, the [Respondent] shall be compelled to
> market the Stillwater Trace Property for sale immediately with a licensed
> realtor chosen by the [Petitioner] and at a price not exceeding the fair market
> value of said property.

9.

Respondent failed to make timely payments on the mortgage secured by the Stillwater Trace

Property for November 2014, December 2014, January 2015, February 2015 and March 2015 and

failed to cure at least two of those defaults within 30 days.

10.

Respondent has not procured Petitioner's release from the mortgage secured by the Stillwater

Trace Property.

11.

Petitioner attempted to list the Stillwater Trace Property for sale with a licensed realtor in

accordance with the Settlement Agreement and Final Decree, but Respondent refused to cooperate.

As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final

Decree.

12.

Paragraph 5(h) of the Settlement Agreement and Paragraph 8 of the Final Decree require

Respondent to immediately take all legal action necessary to transfer title to the Stillwater Trace

Property from Petitioner and Respondent as joint tenants with right of survivorship to Petitioner and

Respondent as tenants in common.

13.

Paragraph 31(h) of the Settlement Agreement provides:

> Each party hereto shall, at any time and from time to time, at the request of the other party hereto, execute, acknowledge, and deliver any deed, certificate of title, instrument, or document which may be necessary, proper, and/or reasonably convenient to implement and effectuate the terms and provisions of this Agreement, including but not limited to the ownership transfers contemplated by [Paragraph 5].

14.

Respondent has failed to prepare and execute the deeds necessary to transfer title to the Stillwater Trace Property as required by Paragraph 5(h) of the Settlement Agreement and Paragraph 8 of the Final Decree. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

15.

Count III

Zebulon Road Properties.

Paragraph 6(a) of the Settlement Agreement and Paragraph 8 of the Final Decree give Respondent sole title to the improved real property located at 1115, 1117 and 1119 Zebulon Road, Griffin, Spalding County, Georgia (hereinafter the "Zebulon Road Properties").

16.

Paragraph 6(b)(3) of the Settlement Agreement and Paragraph 8 of the Final Decree require Respondent to be responsible for, pay, and forever indemnify and hold the Petitioner harmless from all city, county, and state ad valorem and other taxes assessed against the Zebulon Road Properties.

17.

Paragraph 6(c) of the Settlement Agreement and Paragraph 8 of the Final Decree require Respondent to endeavor in good faith to procure Petitioner's release from the mortgage secured by the Zebulon Road Properties.

18.

Paragraph 6(e) of the Settlement Agreement provides:

> In the event that the [Respondent] defaults on any of the obligations identified in subparagraphs (b)(1), (b)(3), and (b)(4) above to this Paragraph 6 and fails to cure said default prior to the expiration of thirty (30) days from the date of the default, the [Respondent] shall be compelled to market the Zebulon Road Properties for sale immediately with a licensed realtor chosen by the [Petitioner] and at a price not exceeding the fair market value of said property.

19.

Respondent failed to pay the taxes on the Zebulon Road Properties which were due on November 15, 2014 and failed to cure this default within 30 days.

20.

Respondent has not procured Petitioner's release from the mortgage secured by the Zebulon Road Properties.

21.

Petitioner attempted to list the Zebulon Road Properties for sale with a licensed realtor in accordance with the Settlement Agreement and Final Decree, but Respondent refused to cooperate. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

22.

Paragraph 6(g) of the Settlement Agreement and Paragraph 8 of the Final Decree require Respondent to immediately take all legal action necessary to transfer title to the Zebulon Road Properties from Petitioner and Respondent as joint tenants with right of survivorship to Petitioner and Respondent as tenants in common.

23.

Paragraph 31(h) of the Settlement Agreement provides:

Each party hereto shall, at any time and from time to time, at the request of
the other party hereto, execute, acknowledge, and deliver any deed, certificate of title,
instrument, or document which may be necessary, proper, and/or reasonably
convenient to implement and effectuate the terms and provisions of this Agreement,
including but not limited to the ownership transfers contemplated by [Paragraph 6].

24.

Respondent has failed to prepare and execute the deeds necessary to transfer title to the

Zebulon Road Properties as required by Paragraph 6(g) of the Settlement Agreement and Paragraph 8

of the Final Decree. As such, Respondent has willfully and contemptuously violated the Settlement

Agreement and Final Decree.

25.

Count IV

The South Center Street Property

Paragraph 7(a) of the Settlement Agreement and Paragraph 8 of the Final Decree give

Respondent sole title to the improved real property located at 726 South Center Street, Thomaston,

Upson County, Georgia (hereinafter the "South Center Street Property").

26.

Paragraph 7(g) of the Settlement Agreement and Paragraph 8 of the Final Decree require

Respondent to immediately take all legal action necessary to transfer title to the South Center Street

Property from Petitioner and Respondent as joint tenants with right of survivorship to Petitioner and

Respondent as tenants in common.

27.

Paragraph 31(h) of the Settlement Agreement provides:

Each party hereto shall, at any time and from time to time, at the request of
the other party hereto, execute, acknowledge, and deliver any deed, certificate of title,
instrument, or document which may be necessary, proper, and/or reasonably
convenient to implement and effectuate the terms and provisions of this Agreement,
including but not limited to the ownership transfers contemplated by [Paragraph 7].

28.

Respondent has failed to prepare and execute the deeds necessary to transfer title to the South

Center Street Property as required by Paragraph 7(g) of the Settlement Agreement and Paragraph 8 of

the Final Decree. As such, Respondent has willfully and contemptuously violated the Settlement

Agreement and Final Decree.

29.

Count V

Wesley Drive Property

Paragraph 8(a) of the Settlement Agreement and Paragraph 8 of the Final Decree give

Petitioner sole title to the improved real property located at 1493 Wesley Drive, Griffin, Spalding

County, Georgia (hereinafter the "Wesley Drive Property").

30.

Paragraph 8(g) of the Settlement Agreement and Paragraph 8 of the Final Decree require

Respondent to immediately take all legal action necessary to transfer title to the Wesley Drive

Property from Petitioner and Respondent as joint tenants with right of survivorship to Petitioner and

Respondent as tenants in common.

31.

Paragraph 31(h) of the Settlement Agreement provides:

> Each party hereto shall, at any time and from time to time, at the request of
> the other party hereto, execute, acknowledge, and deliver any deed, certificate of title,
> instrument, or document which may be necessary, proper, and/or reasonably
> convenient to implement and effectuate the terms and provisions of this Agreement,
> including but not limited to the ownership transfers contemplated by [Paragraph 8].

32.

Respondent has failed to prepare and execute the deeds necessary to transfer title to the

Wesley Drive Property as required by Paragraph 8(g) of the Settlement Agreement and Paragraph 8

of the Final Decree. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

33.

Count VI

Cape San Blas Road Property

Paragraph 10(a) of the Settlement Agreement and Paragraph 8 of the Final Decree give Petitioner sole title to the improved real property located at 4433 Cape San Blas Road, Gulf County, Port St. Joe, Florida (hereinafter the "Cape San Blas Road Property").

34.

Paragraph 10(i) of the Settlement Agreement and Paragraph 8 of the Final Decree require Respondent to immediately take all legal action necessary to transfer title to the Cape San Blas Road Property from Petitioner and Respondent as joint tenants with right of survivorship to Petitioner and Respondent as tenants in common.

35.

Paragraph 31(h) of the Settlement Agreement provides:

> Each party hereto shall, at any time and from time to time, at the request of the other party hereto, execute, acknowledge, and deliver any deed, certificate of title, instrument, or document which may be necessary, proper, and/or reasonably convenient to implement and effectuate the terms and provisions of this Agreement, including but not limited to the ownership transfers contemplated by [Paragraph 10].

36.

Respondent has failed to prepare and execute the deeds necessary to transfer title to the Cape San Blas Road Property from Petitioner and Respondent as joint tenants with right of survivorship to Petitioner and Respondent as tenants in common as required by Paragraph 10(i) of the Settlement Agreement and Paragraph 8 of the Final Decree. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

37.

Count VII

Merrill Lynch Account

Paragraph 13 of the Settlement Agreement and Paragraph 11 of the Final Decree give

Petitioner sole title to the Merrill Lynch Account (account number ending in 0452) (hereinafter the

"Merrill Lynch Account").

38.

Paragraph 31(h) of the Settlement Agreement provides:

> Each party hereto shall, at any time and from time to time, at the request of
> the other party hereto, execute, acknowledge, and deliver any deed, certificate of title,
> instrument, or document which may be necessary, proper, and/or reasonably
> convenient to implement and effectuate the terms and provisions of this Agreement,
> including but not limited to the ownership transfers contemplated by [Paragraph 13].

39.

Respondent has failed and refused to execute and deliver the documents necessary to remove

Respondent from the Merrill Lynch Account. As such, Respondent has willfully and contemptuously

violated the Settlement Agreement and Final Decree.

40.

Count VIII

Alimony

Paragraph 4(a)(1) of the Settlement Agreement and Paragraph 7 of the Final Decree require

Respondent to pay lump sum alimony to Petitioner in 36 equal installments of $2,314.17 on the first

of each month beginning June 1, 2014.

41.

Respondent has failed and refused to pay alimony for January, February or March of 2015 in

the amount of $6,942.51. As such, Respondent has willfully and contemptuously violated the

Settlement Agreement and Final Decree.

42.

Paragraph 4(a)(2) of the Settlement Agreement and Paragraph 7(b) of the Final Decree require Respondent to acquire a motor vehicle for Petitioner not later than October 1, 2014 as part of Respondent's alimony obligation to Petitioner.

43.

When Respondent failed to acquire a motor vehicle for Petitioner by October 1, 2014, Petitioner acquired a motor vehicle at her expense. Subsequently, Respondent paid Petitioner $850.00 per month for the motor vehicle for October, November and December of 2014.

44.

Respondent failed and refused to make payments for Petitioner's motor vehicle for January, February and March of 2015 in the amount of $2,550.00. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

45.

Count IX

iCloud Photographs and Messages

Paragraph 22(a) of the Settlement Agreement and Paragraph 16 of the Final Decree give Petitioner sole title to all other personal property titled in her name. Respondent has wrongfully downloaded, copied or otherwise obtained messages, images, pictures and photographs which are Petitioner's personal property from Petitioner's iCloud account (hereinafter the "iCloud Photographs and Messages") without authorization or permission in violation of the Settlement Agreement and Final Decree.

46.

Respondent has failed and refused to return the iCloud Photographs and Messages, including all digital, electronic, print or other copies thereof, to Petitioner despite repeated requests and Respondent has threatened to publish, distribute or otherwise disseminate the iCloud Photographs

and Messages. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

47.

Count X

Indebtedness

Paragraph 23 of the Settlement Agreement and Paragraph 17 of the Final Decree required Respondent to remove Petitioner from the debts listed in Paragraph 23 of the Settlement Agreement by full cash payment or balance transfer to an account in Respondent's name by December 31, 2014.

48.

Respondent has failed and refused to remove Petitioner from the debts listed in Paragraph 23 of the Settlement Agreement by full cash payment or balance transfer to an account in Respondent's name. Further, Respondent has failed to make timely payments of these debts which has adversely impacted Petitioner's credit score. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

49.

Count XI

Cell Phone for Minor Child

Paragraph 24 of the Settlement Agreement and Paragraph 18 of the Final Decree require Respondent to procure and maintain a cell phone for the Minor Child with not less than 8 GB of usage per month.

50.

Respondent has failed and refused to procure and maintain a cell phone for the Minor Child. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

51.

## Count XII

### School Fees for Minor Child

Paragraphs 3(a)(3) and 3(a)(4) of the Settlement Agreement and Paragraph 3(p) of the Final Decree require Respondent to pay for all primary and secondary private school expenses for the Minor Child including, without limitation, the cost of school-sponsored field trips or excursions.

52.

Respondent has failed and refused to reimburse Petitioner for certain school expenses for the Minor Child in an amount to be proven at trial. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

53.

## Count XIII

### Life Insurance Policies

Paragraph 3(a)(12) of the Settlement Agreement and Paragraph 3(o) of the Final Decree require Respondent to procure and maintain in full force and effect at his expense $500,000.00 of unencumbered life insurance upon his life with "Leah Morgan Singleton, Trustee for Layne Morgan Singleton" as the sole primary beneficiary.

54.

Paragraph 4(a)(3) of the Settlement Agreement and Paragraph 7(c) of the Final Decree require Respondent to procure and maintain in full force and effect at his expense $500,000.00 of unencumbered life insurance upon his life with Petitioner as the sole primary beneficiary.

55.

Respondent has failed and refused to procure and maintain life insurance upon his life as required by the Settlement Agreement and Final Decree. As such, Respondent has willfully and contemptuously violated the Settlement Agreement and Final Decree.

56.

## Count XIV

### BMW Automobiles for Associates of Respondent's Law Firm

Paragraphs 16(f) and 16(g) of the Settlement Agreement and Paragraph 12 of the Final

Decree require Respondent to indemnify and hold the Petitioner harmless from any and all financial

and other obligations arising out of or otherwise associated with the leases on two 2013 BMW 328i

automobiles (with VIN numbers ending in 1730 and 3504) identified in Paragraphs 16(f)(2) and

16(f)(3) of the Settlement Agreement which were provided by Respondent to associates of the

Respondent's law firm.

57.

Respondent has failed and refused to make timely payments of these debts which has

adversely impacted Petitioner's credit score. As such, Respondent has willfully and contemptuously

violated the Settlement Agreement and Final Decree.

58.

## Count XV

### 2013 Income Taxes

Paragraphs 25(a) and (b) of the Settlement Agreement and Paragraph 19 of the Final Decree

require Respondent to prepare and file joint federal and state tax returns for the calendar/tax year

ending December 31, 2013 on behalf of the parties and to forever indemnify and hold the Petitioner

harmless from any and all claims, liability, and judgments of any nature arising from or relating to

any taxes, interest, and penalties assessed in connection with all income tax returns which have been

filed jointly by the parties.

59.

Respondent has failed and refused to timely file the parties' 2013 tax returns or to pay all

taxes, interest and penalties due for 2013.  As such, Respondent has willfully and contemptuously

violated the Settlement Agreement and Final Decree.

60.

Petitioner shows this Court that Respondent is in willful contempt of the Final Decree as set

forth herein.

61.

Petitioner has incurred attorney's fees as a result of Respondent's contemptuous behavior in

failing to comply with the provisions of the parties' Final Decree.  Despite Petitioner's best efforts to

resolve this issue without the need to file an action and incur further attorneys' fees, Respondent's

contemptuous behavior has forced Petitioner to bring this action and incur further attorneys' fees and

costs in prosecuting this case.

WHEREFORE, Petitioner, prays as follows:

(a)     That the Motion for Contempt be granted;

(b)     That Respondent be found in willful contempt of this Court and ordered to purge

himself of contempt by fully complying with the parties' Final Decree by:

> 1)  immediately taking all actions necessary to provide the Minor Child with
>     medical insurance;
>
> 2)  immediately marketing the Stillwater Trace Property for sale with a licensed
>     realtor chosen by the Petitioner and at a price not exceeding the fair market
>     value of said property;
>
> 3)  immediately taking all legal action necessary to transfer title to the Stillwater
>     Trace Property to Petitioner and Respondent as tenants in common;

4) immediately marketing the Zebulon Road Properties for sale with a licensed realtor chosen by the Petitioner and at a price not exceeding the fair market value of said property;

5) immediately taking all legal action necessary to transfer title to the Zebulon Road Properties to Petitioner and Respondent as tenants in common;

6) immediately taking all legal action necessary to transfer title to the South Center Street Property to Petitioner and Respondent as tenants in common;

7) immediately taking all legal action necessary to transfer title to the Wesley Drive Property to Petitioner and Respondent as tenants in common;

8) immediately taking all legal action necessary to transfer title to the Cape San Blas Road Property to Petitioner and Respondent as tenants in common;

9) immediately executing the necessary documents to remove Respondent from the Merrill Lynch Account;

10) immediately paying all past due alimony payments in the amount of $6,942.51 and timely making all future alimony payments;

11) immediately paying all past due car payments for Petitioner's car in the amount of $2,550.00 and timely making all future car payments;

12) immediately returning the iCloud Photographs and Messages, including all digital, electronic, print or other copies thereof to Petitioner;

13) immediately removing Petitioner from the debts listed in Paragraph 23 of the Settlement Agreement;

14) immediately providing and maintaining a cell phone for the Minor Child;

15) immediately reimbursing Petitioner certain school expenses for the Minor Child in an amount to be proven at trial;

16) immediately procuring and maintaining in full force and effect at his expense $500,000.00 of unencumbered life insurance upon his life with "Leah Morgan Singleton, Trustee for Layne Morgan Singleton" as the sole primary beneficiary;

17) immediately procuring and maintaining in full force and effect at his expense $500,000.00 of unencumbered life insurance upon his life with Petitioner as the sole primary beneficiary;

18) immediately paying all past due payments on the leases for the two 2013 BMW 328i automobiles provided to Respondent's associates and timely making all future payments on the 2013 BMW leases; and

19) immediately filing the parties' 2013 joint federal and state tax returns and paying all taxes, interest and penalties due for 2013;

(c)     That Petitioner be reimbursed for all attorney's fees incurred as a result of Respondent's contemptuous behavior;

(d)     That Petitioner be awarded her reasonable attorney's fees and expenses associated with bringing this motion;

(e)     That Petitioner be granted such other and further relief as this Court deems just and proper.

This __19__ day of __March__, 2015.

ELLIS FUNK, PC

By: _____
Alyson F. Lembeck
Georgia Bar No. 261369

[Signatures continued on next page]

By: _____
Kelly E. Malone
Georgia Bar No. 221377

One Securities Centre
3490 Piedmont Road, Suite 400
Atlanta, Georgia 30305
Tel: (404) 233-2800
Facsimile: (404) 233-2188

Attorneys for Petitioner

### IN THE SUPERIOR COURT OF SPALDING COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| LEAH M. SINGLETON | ) |
|     Petitioner, | ) |
| | ) |
| v. | )     CIVIL ACTION |
| | ) |
| DWAYNE C. SINGLETON, | )     FILE NO. _____ |
| | ) |
|     Respondent. | ) |

## VERIFICATION

PERSONALLY APPEARED before me, the undersigned officer, duly authorized to administer oaths, LEAH M. SINGLETON, who, after being first duly sworn, states that the foregoing *Petition for Citation of Contempt* is true and correct, to the best of her knowledge, information and belief.

_____
LEAH M. SINGLETON

Sworn to and subscribed before me this
the 19th day of March 2015.

_____
Notary Public

[SEAL]

My Commission Expires: 8/31/2017

*(Notary seal: GENEVA FRANCES GREEN, NOTARY PUBLIC, GWINNETT COUNTY, GA, EXP. AUG. 31, 2017)*

IN THE SUPERIOR COURT FOR THE COUNTY OF SPALDING

STATE OF GEORGIA

| | | |
|---|---|---|
| LEAH M. SINGLETON, | ) | CIVIL ACTION FILE |
| | ) | |
|     Plaintiff | ) | NO. 14V-340.  (WTS) |
| | ) | |
| v. | ) | |
| | ) | |
| DWAYNE C. SINGLETON, | ) | |
| | ) | |
|     Defendant. | ) | |

### FINAL JUDGMENT AND DECREE OF DIVORCE

Upon a consideration of the joint motion for judgment on the pleadings and the record in this case, it is the judgment of this Court that a total divorce be granted, that is to say, a divorce *a vinculo matrimonii*, between the parties to the above styled action upon legal principles.  And, it is considered, ordered, and declared by the Court that the marriage contract heretofore entered into between the parties to this case, from and after this date, be and is set aside and dissolved as fully and effectually as if no such contract had ever been made or entered into.  Plaintiff and defendant in the future shall be held and considered as separate and distinct persons altogether unconnected by any nuptial union or contract whatsoever and both shall have the right to remarry.

The terms and provisions of the Settlement Agreement between plaintiff and defendant, dated May 27, 2014 (which incorporates by reference the Parenting Plan, dated March 11, 2014), together with the terms and provisions of the Addendum to Settlement Agreement, are incorporated herein by reference as fully and effectually as if set forth herein verbatim.

EXHIBIT **A**

RECORDED

MINUTE BOOK  432

PAGE  1869

Leah M. Singleton v. Dwayne C. Singleton,
Superior Court of Spalding County, Case No. 14V-340
Final Judgment and Decree of Divorce

-1-

1.      In accordance with and subject to the further terms and provisions of Paragraph 1 of the Parenting Plan, dated March 11, 2014, plaintiff and defendant are awarded the joint legal custody of their minor child, Layne Morgan Singleton (hereinafter "Layne"); provided, however, that plaintiff shall be Layne's primary legal custodian.

2.      In accordance with and subject to the further terms and provisions of Paragraph 2 of the Parenting Plan, plaintiff and defendant are awarded the joint physical custody of Layne.  Each party's parenting times with Layne are identified in Paragraph 2(c) and 2(d) of the Parenting Plan.

3.      In accordance with OCGA §§ 19-5-12(c) and 19-6-15(c) and the parties' stipulations, the Court finds:

(a)      There is one (1) child for whom support in being determined hereunder;

(b)      Plaintiff's gross monthly income is $4,983.33;

(c)      Defendant's gross monthly income is $10,833.33;

(d)      For purposes of the child support calculation, plaintiff is Layne's custodial parent;

(e)      For purposes of the child support calculation, defendant is Layne's non-custodial parent;

(f)      There are no Schedule B adjustments to either parent's income and neither parent is receiving federal social security benefits;

(g)      The combined adjusted income for plaintiff and defendant is $15,816.66

(h)      The basic child support obligation is $1,672.00;

(i)      Plaintiff's pro rata share of the basic child support obligation is

$526.85;

(j)      Defendant's pro rata share of the basic child support obligation is

$1,145.15;

(k)      As health insurance for Layne is reasonably available to defendant at a

reasonable cost ($312.76) a month, defendant shall maintain medical insurance for the benefit of

the Layne;

(l)      There are no work-related child care expenses for either parent;

(m)      The presumptive amount of child support due from defendant to plaintiff

is $1,046.60;

(n)      In accordance with and subject to the terms and provisions of

Paragraph 3(a)(2) of the Agreement, defendant is responsible for and shall pay all of Layne's

health care expenses not covered and/or paid by insurance;

(o)      In accordance with and subject to the terms and provisions of Paragraph

3(a)(12) of the Agreement, defendant is to maintain in full force and effect and at his expense

five hundred thousand ($500,000.00) dollars of life insurance upon his life with Layne as the sole

primary beneficiary.  The cost of such insurance to defendant is $7,165.00 annually;

(p)      In accordance with and subject to the terms and provisions of Paragraph

3(a)(3) of the Agreement, defendant is responsible for and shall pay all primary and secondary

private school expenses for Layne.  Presently, such costs are approximately $4,500.00

annually;

(q)     In accordance with OCGA §§19-6-15(i)(2)(D), and 19-6-15(i)(2)(J)(i), specific deviations are allowed for the expenditures identified in subparts (o) and (p) above. The life insurance deviation is in Layne's best interest inasmuch as the maintenance of such insurance will provide assets for the child's support in the event of defendant's death during her minority. The extraordinary educational expense deviation is in Layne's best interest since it will afford her the opportunity to attend private schools with a record of academic achievement.

(r)     In accordance with and subject to the terms and provisions of Paragraph 3(a)(5) of the Agreement, defendant is responsible for and shall pay up to one thousand ($1,000.00) dollars each calendar year for any tutoring costs outside of Layne's school. No deviation is allowed for this expense;

(s)     In accordance with and subject to the terms and provisions of Paragraph 3(a)(4) of the Agreement, defendant is responsible for and shall pay up to four thousand ($4,000.00) dollars each calendar year for Layne's extracurricular activities. No deviation is allowed for this expense;

(t)     In accordance with the terms and provisions of Paragraph 2(t) of the Parenting Plan, a parenting time deviation shall not be allowed;

(u)     In accordance with O.C.G.A. §9-6-15(i)(3), a non-specific deviation is allowed in the amount of $928.44. This deviation is in Layne's best interest given the support provisions of Paragraph 3(a) of the Agreement.

(v)     The amount of child support that would have been required if the presumptive amount of child support had not been rebutted is $928.00 month;

(w)     The deviation in the presumptive amount of child support does not seriously impair the ability of plaintiff to maintain minimally adequate housing, food, and clothing for Layne;

(x)     The final child support amount due from defendant to plaintiff is zero.

4.      The Child Support Worksheet and Schedule E are attached hereto and incorporated herein by this reference pursuant to OCGA. § 19-5-12(c).

5.      In accordance with the terms and provisions of OCGA §19-6-32(a.1)(1)(B), the child support shall not be withheld from defendant's wages.

6.      Whenever, in violation of the terms of this order there shall have been a failure to make the support payments due hereunder so that the amount unpaid is equal to or greater than the amount payable for one month, the payments required to be made may be collected by the process of continuing garnishment for support.

7.      In accordance with and subject to the terms and provisions of Paragraph 4(a)(1), 4(a)(2), and 4(a)(3) of the Agreement, defendant shall:

(a)     Pay to plaintiff $83,310.00 in lump sum alimony;

(b)     Acquire a motor vehicle for plaintiff by not later than October 1, 2014;

(c)     Maintain in full force and effect five hundred thousand ($500,000.00) dollars of life insurance upon his life with plaintiff named as the sole primary beneficiary.

8.      The real properties in which plaintiff and defendant have ownership interests are equitably divided in accordance with and subject to the terms and provisions of Paragraphs 5, 6, 7, 8, 9, and 10 of the Agreement.

9.      The parties' motor vehicles are equitably divided in accordance with and subject to the terms and provisions of Paragraph 11 of the Agreement.

10.    The furniture, furnishings, appliances, equipment, household accessories, and tools belonging to plaintiff and defendant are equitably divided in accordance with and subject to the terms and provisions of Paragraph 12 of the Agreement.

11.    The parties' investment accounts and banking accounts are equitably divided in accordance with and subject to the terms and provisions of Paragraphs 13, 14, and 15 of the Agreement.

12.    Each party's legal and equitable interests in *Singleton & Singleton, LLC*, *Singleton, Pasley & Nuce, LLC*, and *Laynie Bug's Sweets and Treats, LLC* are allocated in accordance with and subject to the terms and provisions of Paragraphs 16, 17, and 18 of the Agreement.

13.    In accordance with and subject to the terms and provisions of Paragraph 19 of the Agreement, defendant shall maintain plaintiff as a "family member" of *The Club at Shoal's Creek* at his sole cost and expense so as to afford her the full and uninterrupted use of and access to all club amenities, including, but not limited to, the clubhouse, pool, golf course, tennis courts, etc.

14.    The parties' firearms are equitably divided in accordance with the terms and provisions of Paragraph 20 of the Agreement.

15.    In accordance with and subject to the terms and provisions of Paragraph 21 of the Agreement, plaintiff is awarded the sole title to all current and future assets in and benefits from her retirement plans and accounts.

16.    The parties' remaining personal property is equitably divided in accordance with and subject to the terms and provisions of Paragraph 22 of the Agreement.

17.    The parties' indebtedness is divided and otherwise allocated between plaintiff and defendant in accordance with and subject to the terms and provisions of Paragraph 23 of the Agreement.

18.    In accordance with and subject to the terms and provisions of Paragraph 24 of the Agreement, defendant shall maintain a cell phone account for Layne at his expense which provides to her not less than eight (8) GB of usage per month.

19.    The parties' rights and responsibilities regarding income tax returns, income taxes, the claiming of Layne as a dependent exemption, the deduction of expenses, etc. are governed by the terms and provisions of Paragraph 25 of the Agreement.

20.    In accordance with the terms and provisions of Paragraph 26 of the Agreement, plaintiff shall not recover any attorney's fees and expenses of litigation from defendant and defendant shall not recover any attorney's fees and expenses of litigation from plaintiff.

21.    The costs of these proceedings are cast upon the plaintiff.

This the ___10___ day of ___July___, 2014.

_____
STEPHEN E. BOSWELL, SENIOR JUDGE,
SUPERIOR COURT OF SPALDING COUNTY
GRIFFIN JUDICIAL CIRCUIT

ORDER PREPARED AND
PRESENTED BY:

STEPHEN E. BOSWELL
Senior Superior Court Judge
State of Georgia

_____
Patrick J. Fox,
Attorney for Plaintiff
State Bar No. 272600
McNally, Fox, Grant & Davenport, P.C.
100 Habersham Drive
Fayetteville, Georgia 30214
(770) 461-2223

(Signatures continued on page 8)

Leah M. Singleton v. Dwayne C. Singleton,
Superior Court of Spalding County, Case No. 14V-340
Final Judgment and Decree of Divorce                    -7-

Dwayne C. Singleton, Pro Se
1115 Zebulon Road
Griffin, Georgia 30224
770-227-5300

IN THE SUPERIOR COURT FOR THE COUNTY OF SPALDING

STATE OF GEORGIA

| | | |
|---|---|---|
| LEAH M. SINGLETON, | ) | CIVIL ACTION FILE |
| | ) | |
| Plaintiff | ) | NO. 14V-340 |
| v. | ) | |
| | ) | |
| DWAYNE C. SINGLETON, | ) | |
| | ) | |
| Defendant. | ) | SETTLEMENT AGREEMENT |

AGREEMENT made and entered into this _27_ day of May, 2014, by and between LEAH

M. SINGLETON, hereinafter referred to as the "Wife", DWAYNE C. SINGLETON,

hereinafter referred to as the "Husband."

### W I T N E S S E T H :

WHEREAS, the Wife and the Husband were lawfully married on December 16, 1995,

and lived together until January 14, 2014, at which time they separated in consequence of the fact

that their marriage had become irretrievably broken; and

WHEREAS, the Wife and the Husband are now living in a *bona fide* state of separation

and intend to live apart for the remainder of their lives; and

WHEREAS, the Wife has filed an action for divorce in the Superior Court for Spalding

County, Georgia; and

WHEREAS, in view of their intentions to remain separated and to dissolve their

marriage, the Wife and the Husband desire to settle all rights, duties, and obligations between

them, including, but not limited to, those pertaining to child custody, child support,

Leah M. Singleton v. Dwayne C. Singleton
Superior Court of Spalding County, Case No. 14V-340
Settlement Agreement

-1-

EXHIBIT **B**

alimony/spousal support, an equitable division of marital property, the allocation of marital

indebtedness, and attorney's fees, so as to avoid both the uncertainty of result and the expense of

a trial;

NOW, THEREFORE, in and for the consideration of the premises, the parties do hereby

agree as follows:

1.   CONTINUED SEPARATION.

The Wife and the Husband shall continue to live separate and apart and each shall be free

from the interference, authority and control, either direct or indirect, of the other party.  Each

such party may reside at such place or places as he or she may select and each may for his or her

own separate use and benefit engage in any employment, business or profession which he or she

may deem advisable.  Except as hereinafter set forth in this Agreement, neither party shall be

responsible for any debt, contract or other obligation of the other party contracted after the date

of this Agreement.

2.   LEGAL AND PHYSICAL CUSTODY OF
     LAYNE MORGAN SINGLETON.

The terms and provisions of the Parenting Plan, dated March 11, 2014, are incorporated

herein by this reference.

3.   CHILD SUPPORT.

(a)   In discharge of any and all obligations that the Husband has or may have to

provide for the financial support, care, maintenance, and education of Layne Morgan Singleton

(hereinafter sometimes referred to as "Layne"), he shall:

DCS JW8

(1)    Maintain in full force and effect and at his expense a policy or plan of medical, dental, vision, hospitalization, and health insurance for Layne that provides benefits and coverages equivalent to those currently provided by the policy issued by Humana and identified as policy number 685539.

(A)    If the Husband fails to maintain the insurance required of him by the terms and provisions of this subparagraph (a)(1), the Wife may procure a replacement policy of medical, dental, vision, hospitalization, and/or health insurance; however, she shall have no affirmative obligation to do so.  Should she elect to purchase such replacement insurance, the Husband shall:

(i)    Pay to the Wife (as additional child support) any and all fees, expenses, and charges which she incurs with respect to any application for this insurance; and

(ii)    Pay to the Wife (as additional child support) an amount equal to all premiums which she is charged for the maintenance of this insurance;

(2)    Be responsible for and pay all of all health care expenses incurred by or on behalf of Layne that are not covered and/or paid by insurance.  As used herein, the term "health care expenses" means and includes those expenses and charges from any medical center, hospital (including a psychiatric hospital), emergency room, clinic, immediate care facility, urgent care facility, infirmary, alcohol and drug hospital, alcohol and drug treatment center, alcohol and drug rehabilitation center, convalescent home, physical rehabilitation center, nursing home, pharmacy, medical doctor (including a psychiatrist), physician, physician assistant, nurse practitioner, nurse,

DCS JMS

nursing assistant, medical assistant, emergency medical technician, paramedic, psychologist, licensed marriage and family therapist, therapist, licensed professional counselor, counselor, licensed clinical social worker, social worker, psychoanalyst, psychometrist, physiatrist, dentist, orthodontist, oral surgeon, optometrist, audiologist, osteopath, podiatrist, chiropractor, pharmacist, and any other practitioner of the healing arts, that are not covered and/or paid by the insurance to be maintained by the Husband in accordance with subsection (1) above to this subparagraph (a). In the event the Wife expends cash monies in order to obtain medical services, treatment, and/or products for Layne or should she charge the purchase of medical services, treatment, and/or products for said child on a credit account, she shall submit written evidence of any such expense to the Husband prior to the expiration of thirty (30) days from the date of said treatment, service, or purchase and the Husband shall reimburse the Wife for said expenditure(s) prior to the expiration of thirty (30) days from the date of written notice to the Husband of the fact and amount of each such expenditure. As used herein, the term "written notice" means the Wife's presentation to the Husband of a copy of the invoice or statement for a medical expenditure, or a copy of a charge card receipt for a medical expenditure, or a copy of a cash receipt for a medical expenditure, or a copy of a cancelled check for a medical expenditure;

   (3) Be responsible for and pay all primary and secondary private school expenses for Layne, including, without limitation, all tuition, all matriculation fees, all registration fees, all book expenses, all study aid costs, all supply costs, all tutoring expenses, all transportation fees; all class dues, all fund-raiser expenses, all club membership dues and fees, all

DC5 _pmf_

honorariums, etc.; provided, however, that the Husband's liability hereunder shall not exceed five thousand ($5,000.00) dollars for each academic year;

        (4)      Be responsible for and pay up to four thousand ($4,000.00) dollars each calendar year for the following expenses incurred by the Wife:

        (A)     All fees, expenses, and deposits charged for Layne's registration in sports, including, without limitation, cheerleading, golf, gymnastics, soccer, softball, swimming and/or diving, tennis, and track and field;

        (B)     All costs for Layne's sports uniforms (practice and game), sports gear and equipment (including, without limitation, shoes, cleats, tennis rackets, tennis balls, softball bats, softball gloves, softballs, pads, etc.);

        (C)     All fees, expenses, and deposits for Layne's enrollment in sports camps;

        (D)     All fees, expenses, and deposits charged for Layne's registration in dance, including, without limitation, free form, modern, tap, and ballet;

        (E)     All costs for the purchase of Layne's dance costumes, shoes, and practice clothing;

        (F)     All fees, expenses, and deposits for Layne's dance lessons, dance academies, dance camps, and dance recitals;

        (G)     All fees, expenses, and deposits for Layne's registration and participation in chorus and band;

DCS

(H)    All costs for Layne's chorus uniforms, band uniforms, shoes, musical instrument rentals and/or purchases, and recitals;

(I)    All fees, expenses, and deposits charged for Layne's participation in band camps, individual and/or group music lessons, and musical instrument maintenance, repairs, and replacement;

(J)    All fees, expenses, and deposits charged for Layne's individual or group voice lessons, including the tuition for the Lisa Kelly Voice Academy;

(K)    The cost of Layne's school-sponsored field trips or excursions; and

(L)    All dues, fees, and expenses for Layne's membership and participation in school-sponsored and/or school-approved clubs, e.g. Key Club, Interact Club, Junior Civitans, Beta Club, National Honor Society, etc.;

(5)    Be responsible for and pay the cost of any tutoring for Layne outside of her school(s); provided, however, that the Husband's liability hereunder shall not exceed one thousand ($1,000.00) dollars during each calendar year;

(6)    Be responsible for and pay all expenses for Layne's attendance at and participation in any junior/senior prom(s), including, without limitation, the cost of prom dresses, shoes, boutonnieres, limousine, etc.; provided, however, that the Husband's liability hereunder shall not exceed one thousand five ($1,500.00) dollars during each calendar year;

(7)    Be responsible for and pay all fees for Layne's enrollment in advanced placement ("AP") classes;

Leah M. Singleton v. Dwayne C. Singleton
Superior Court of Spalding County, Case No. 14V-340
Settlement Agreement

-6-

(8)    Be responsible for and pay all fees for Layne's enrollment in two (2) preparation courses for the college entrance examinations, e.g. a Kaplan course;

(9)    Be responsible for and pay all fees for Layne to register for and to take college entrance examinations;

(10)    Be responsible for and pay all of Layne's college application fees; provided, however, that the Husband's liability hereunder shall be limited to application fees for not more than ten (10) different colleges and/or universities;

(11)    Be responsible for and pay all of Layne's high school senior class expenses, e.g. the expenses for her senior ring, her senior class trip, her senior photographs, etc.; provided, however, that the Husband's liability hereunder shall not exceed one thousand five ($1,500.00) dollars; and

(12)    Maintain in full force and effect and at his expense five hundred thousand ($500,000.00) dollars of unencumbered life insurance upon his life. The Husband shall take the action necessary to name and to continue the sole primary beneficiary designation of said policy as follows: *Leah Morgan Singleton, Trustee for Layne Morgan Singleton.* On October 31st, of each calendar year (beginning October 31, 2014), the Husband shall furnish to the Wife written evidence of his compliance with the terms and provisions of this subparagraph (a)(12) from the insurance carrier(s) issuing the policy or policies of life insurance maintained by him in discharge of his obligations hereunder. As used in the preceding sentence, the term "written evidence" means a document containing the name and address of the insurance carrier, the policy/contract number for the life insurance, the name of the primary beneficiary, the amount of death benefits,

Leah M. Singleton v. Dwayne C. Singleton
Superior Court of Spalding County, Case No. 14V-340
Settlement Agreement

-7-

an affirmation that all premiums are paid and that the policy is in good standing, and an affirmation that the policy is not subject to any loan.

(A)     During the period of the trust, the Wife, as Trustee, shall hold, manage, invest and reinvest the property therein, and shall distribute the principal and income thereof as follows:

(i)     The Wife shall pay to or for the benefit of Layne, from time to time, from the net income and principal of said trust such amount or amounts as the Wife deems advisable for the proper health, maintenance, and support of Layne in accordance with said child's standard of living prior to the Husband's death, for said child's education at any available level, including the expenses of a college and postgraduate education, and to establish said child in a trade, profession or business;

(ii)     Any income not paid out or used currently shall be accumulated and added to the principal of the trust;

(iii)     When Layne attains the age of twenty-five (25) years, this trust shall terminate, and all property remaining in trust shall be distributed to Layne, in fee simple, share and share alike, per stirpes; and

(iv)     If Layne survives the Husband but dies prior to her twenty-fifth (25th) birthday, the property remaining in trust shall be distributed to the Wife, in fee simple.

(B)     The Wife shall have the power to do all things and to execute such instruments as she shall deem necessary or proper, including the following powers, all of which may be exercised without order of or report to any officer, court or tribunal:

(i)    All powers enumerated in OCGA §53-12-232, as now in effect or hereafter amended, which powers are, by this reference, incorporated herein and made a part hereof as fully and effectually as if set forth herein verbatim;

(ii)    To serve without being required to make or file any inventory or appraisal, or to file any annual or other returns or reports to any officer or court, or to give any bond whether or not the Wife shall be a resident of the State of Georgia, or if a bond is required by law, but a surety is not made mandatory by law, no surety on such bond shall be required;

(iii)    To file such returns as may be required under the tax laws of the United States, any state, any political subdivision of any state or any foreign country; to make any election permitted by any tax law if, in the Wife's opinion, such election is in the best interest of said trust; and to agree to such apportionment of taxes and application of estimated tax payments, refunds and credits as the Wife shall deem equitable under all the circumstances;

(iv)    To enter into contracts or agreements on behalf of the trust, including the handling and managing of the property and to carry out the terms thereof; and

(v)    To employ agents, accountants, auditors, attorneys, real estate agents, and to pay them reasonable fees for their services.

(C)    If, while he is in life, the Husband fails to maintain the insurance required of him by the terms and provisions of this subparagraph (a)(12), the Wife may procure a replacement policy of life insurance; however, she shall have no affirmative obligation to do so. Should she elect to purchase replacement life insurance, the Husband shall:

DCS

(i)     Furnish such information as is necessary to complete all applications for the insurance;

(ii)     Submit to such physical examinations (including the giving of blood, tissue, and other bodily fluid specimens) as may be required by such prospective insurer and/or its underwriter(s);

(iii)     Pay to the Wife (as additional child support) any and all fees, expenses, and charges which she incurs with respect to any application for insurance; and

(iv)     Pay to the Wife (as additional child support) an amount equal to all premiums which she is charged for the maintenance of such insurance.

(D)     If, at his death, the Husband is in default of the terms and provisions of this subparagraph (a)(12), the difference between five hundred thousand ($500,000.00) dollars and the amount of life insurance proceeds actually paid to the Trustee in accordance with this subparagraph (a)(12) shall be a first charge against the Husband's estate and his executor(s), administrator(s), conservator(s), and personal representative(s) shall pay this sum to the Trustee in preference to all other claims against and debts of said estate.

(b)     Layne's eligibility for the support identified in subparagraph (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), (a)(9), (a)(10), and (a)(11) above to this Paragraph 3 shall terminate upon the first occurrence of:

(1)     The date that Layne attains the age of eighteen (18) years, unless the term of support is extended as provided in subparagraph (c) below to this Paragraph 3;

(2)     Layne's marriage;



(3)     The legal emancipation of Layne by an event other than age; or

(4)     Layne's death.

(c)     If, as of the date that Layne attains the age of eighteen (18) years, she is enrolled in and attending a secondary school and she has not been previously married or emancipated, her eligibility for the support identified in subparagraph (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), (a)(9), (a)(10), and (a)(11) above to this Paragraph 4 shall not terminate but shall continue until the first occurrence of her completion of secondary school, her marriage, her emancipation by an event other than age, or the date on which she attains twenty (20) years of age.

(d)     Layne's eligibility for the support identified in subparagraph (a)(1), (a)(2), and (a)(12) above to this Paragraph 3 shall terminate upon the first occurrence of:

(1)     Layne's marriage;

(2)     The date that Layne attains the age of twenty-three (23) years and six (6) months;

(3)     The date that Layne receives a bachelor's degree from an accredited college or university; or

(4)     The date of Layne's death.

(e)     The Husband hereby waives his statutory right under the laws of this State to modify, revise, suspend, reduce, or abate any of the support obligations identified in subparagraph (a) above to this Paragraph 3 based upon the occurrence of any one or more of the following events:

(1)     A change in the Husband's income;

(2)   A change in the Husband's financial circumstances;

(3)   The Husband's remarriage;

(4)   The Wife's remarriage;

(5)   A change in the Wife's income; or

(6)   A change in the Wife's financial circumstances.

4.   **ALIMONY.**

(a)   In discharge of any and all obligations that the Husband has or may have to provide for the financial support, care, and maintenance of the Wife, he shall:

(1)   Pay to the Wife (without demand, setoff, or deduction) the sum of eighty-three thousand three hundred ten ($83,310.0) dollars. This support shall be paid in thirty-six equal monthly installments of two thousand three hundred fourteen and seventeen/100 ($2,314.17) dollars each. These installments shall be due on the first day of each calendar month, beginning June 1, 2014 and continuing through and including May 1, 2017;

(2)   Acquire a motor vehicle for the Wife by not later than October 1, 2014.

(A)   If the Husband elects to discharge his obligation hereunder by purchasing a vehicle, the year, make, and model of said vehicle shall be subject to the Wife's approval and the Husband's liability for the purchase price shall not exceed thirty-eight thousand ($38,00.00) dollars.

(B)   If the Husband elects to discharge his obligation hereunder by leasing a vehicle, the year, make, and model shall be subject to the Wife's approval and the

Lenh M. Singleton v. Dwayne C. Singleton
Superior Court of Spalding County, Case No. 14V-340
Settlement Agreement

-12-



Husband's liability for the monthly lease payment shall not exceed eight hundred fifty ($850.00) dollars and the term of the lease shall not exceed thirty-six (36) months; and

    (3)    Maintain in full force and effect and at his expense five hundred thousand ($500,000.00) dollars of life insurance upon his life with the Wife designated as the sole primary beneficiary thereof. On October 31st of each calendar year (beginning June 30, 2014), the Husband shall furnish to the Wife written evidence of his compliance with the terms and provisions of this subparagraph (a)(3) from the insurance carrier(s) issuing the policy or policies of life insurance maintained by him in discharge of his obligations hereunder. As used in the preceding sentence, the term "written evidence" means a document containing the name and address of the insurance carrier, the policy/contract number for the life insurance, the name of the primary beneficiary, the amount of death benefits, an affirmation that all premiums are paid and that the policy is in good standing, and an affirmation that the policy is not subject to any loan.

    (A)    If, while he is in life, the Husband fails to maintain the insurance required of him by the terms and provisions of this subparagraph (a)(3), the Wife may procure a replacement policy of life insurance; however, she shall have no affirmative obligation to do so. Should she elect to purchase replacement insurance, the Husband shall:

    (i)    Furnish such information as is necessary to complete all applications for the insurance;

    (ii)    Submit to such physical examinations (including the giving of blood, tissue, and other bodily fluid specimens) as may be required by such prospective insurer and/or its underwriter(s);

Leah M. Singleton v. Dwayne C. Singleton
Superior Court of Spalding County, Case No. 14V-340
Settlement Agreement            -13-

         (iii)    Pay to the Wife (as additional alimony) any and all fees, expenses, and charges which she incurs with respect to any application for the insurance; and

         (iv)    Pay to the Wife (as additional alimony) an amount equal to all premiums which she is charged for the maintenance of such insurance.

         (B)    If, at his death, the Husband is in default of the terms and provisions of this subparagraph (a)(3), the difference between the amount of life insurance to be maintained by the Husband in accordance with the terms and provisions of this subparagraph (a)(3) and the amount of insurance proceeds actually paid to the Wife in accordance with this subparagraph (a)(3) shall be a first charge against the Husband's estate and his executor(s), administrator(s), conservator(s), and personal representative(s) shall pay this sum to the Wife in preference to all other claims against and debts of said estate with the exception of that claim created by Paragraph 3(a)(12)(D) above.

         (b)    It is acknowledged, stipulated, and agreed by the Husband and the Wife that all of the obligations identified in subparagraph (a) above to this Paragraph 4 are intended to be and are, in fact, support for the Wife.  Accordingly, said obligations constitute Domestic Support Obligations under the U.S. Bankruptcy Code.

         (c)    The obligations identified in subparagraph (a) above to this Paragraph 4 shall not terminate upon the Wife's remarriage.

         (d)    The Husband hereby irrevocably waives his statutory right(s) under the laws of the State of Georgia, together with any and all rights and claims that he may hereafter have or acquire under the laws of any jurisdiction, to modify, revise, suspend, terminate, reduce, or abate

DCS
RMS

any of the obligations identified in subparagraph (a) above to this Paragraph 4 based upon the occurrence of any one or more of the following events:

        (1)     A change in the Wife's income;

        (2)     A change in the Wife's financial circumstances;

        (3)     The Wife's cohabitation with another person in a meretricious

relationship;

        (4)     A change in the Husband's income; or

        (5)     A change in the Husband's financial circumstances.

(e)     The Wife hereby irrevocably waives her statutory right(s) under the laws of the State of Georgia, together with any and all rights and claims that she may hereafter have or acquire under the laws of any jurisdiction, to modify, revise, increase or extend any of the obligations identified in subparagraph (a) above to this Paragraph 4 based upon the occurrence of any one or more of the following events:

        (1)     A change in the Husband's income;

        (2)     A change in the Husband's financial circumstances;

        (3)     The Husband's marriage;

        (4)     A change in the Wife's income; or

        (5)     A change in the Wife's financial circumstances.

5.      STILLWATER TRACE PROPERTY.

(a)     Subject to the further terms and provisions of this Paragraph 5, the Husband shall have and enjoy the sole title to the improved real property located at and known as 23 Stillwater

Trace, Griffin, Spalding County, Georgia (hereinafter "the Stillwater Trace Property"). The

Stillwater Trace Property is more particularly described in Exhibit "5(a)" to this Agreement,

which description is incorporated herein by reference.

    (b)    The Husband shall be responsible for, pay, and forever indemnify and hold the

Wife harmless from:

    (1)    The mortgage indebtedness to Quicken Loans (the last 4 digits of the

account number being 8530) that is secured by the Stillwater Trace Property;

    (2)    Any mortgage obligation hereafter secured by the Stillwater Trace

Property;

    (3)    All utility expenses charged to the Stillwater Trace Property for electricity,

gas, telephone service, water, sewage, sanitation/refuse collection, cable/satellite television,

internet service, and security system monitoring;

    (4)    All premiums necessary to maintain a lender-required policy of

homeowner's and hazard insurance upon the Stillwater Trace Property;

    (5)    All city, county, and state ad valorem and other property taxes assessed

against the Stillwater Trace Property;

    (6)    All homeowner's association dues, fees, and assessments for the Stillwater

Trace Property; and

    (7)    All maintenance and repair expenses for the Stillwater Trace Property.

    (c)    The Husband shall endeavor, in good faith, to procure the Wife's release from all

liability for the mortgage indebtedness currently secured by the Stillwater Trace Property,

whether by refinancing or otherwise.  Except as provided in subparagraph (f) below to this

Paragraph 5, the Husband shall not be required to sell the Stillwater Trace Property.

     (d)    At such time as the Husband procures the Wife's release from all liability for the

mortgage indebtedness currently secured by the Stillwater Trace Property, the Wife shall:

         (1)    Quitclaim to the Husband all of her right, title, and interest in and to the

Stillwater Trace Property; and

         (2)    Assign and release to the Husband all of her right, title, and interest in and

to the policy of homeowner's and hazard insurance issued by Allied Insurance (policy number

HOD0031229346) covering the Stillwater Trace Property and its contents.

     (e)    By her execution of this Agreement, the Wife transfers, conveys, and assigns to

the Husband all of her right, title, and interest in and to the utility deposits and accounts for the

Stillwater Trace Property.

     (f)    In the event that the Husband defaults on any of the obligations identified in

subparagraph (b)(1), (b)(2), (b)(4), and (b)(5) above to this Paragraph 5 and fails to cure said

default prior to the expiration of thirty (30) days from the date of the default, the Husband shall

be compelled to market the Stillwater Trace Property for sale immediately with a licensed realtor

chosen by the Wife and at a price not exceeding the fair market value of said property.  The

Husband and the Wife shall be required to accept any bona fide purchase offer that equals or

exceeds the outstanding balance due on the mortgage indebtedness secured by the Stillwater

Trace Property.  At such time as the Husband procures the Wife's release from all liability for

the mortgage indebtedness secured by the Stillwater Trace Property, the terms and provisions of this subparagraph (f) shall be null and void.

(g)    If, from time to time, the Wife and the Husband cannot agree upon the fair market value of the Stillwater Trace Property, said value shall be determined as follows:

    (1)    The Wife shall engage a certified appraiser;

    (2)    The Husband shall engage a certified appraiser;

    (3)    The two appraisers shall appoint a third certified appraiser;

    (4)    The three appraisers shall individually inspect and appraise the subject property;

    (5)    The three appraised values shall be added together and the sum thereof divided by three;

    (6)    The resulting quotient shall constitute the fair market value.

The Wife shall be responsible for and pay all of the fees charged by the appraiser engaged by her and fifty percent (50%) of the fees charged by the third appraiser. The Husband shall be responsible for and pay all of the fees charged by the appraiser engaged by him and fifty percent (50%) of the fees charged by the third appraiser.

(h)    The Wife and the Husband shall immediately take all legal action necessary to title the Stillwater Trace Property in the names of the Wife and the Husband as tenants in common rather as joint tenants with rights of survivorship. This form of ownership (tenants in common) shall continue until the Husband procures the Wife's release from all liability for the

mortgage indebtedness secured by the Stillwater Trace Property, whether this release is procured by refinancing or otherwise.

(1)     Upon the Husband's death (whether such death occurs prior or subsequent to the date that the action contemplated and required by this subparagraph (h) has been completed), the Wife shall quitclaim to the Husband's estate her undivided one-half (½) ownership interest in and to the Stillwater Trace Property, free of any and all claims of the Wife, the Wife's heirs, the Wife's administrators, the Wife's executors, the Wife's guardians, the Wife's conservators, and the Wife's personal representatives.  This conveyance shall be subject to any indebtedness secured by the Stillwater Trace Property, which indebtedness shall be assumed and paid by the Husband's estate.

(2)     Upon the Wife's death (whether such death occurs prior or subsequent to the date that the action contemplated and required by this subparagraph (h) has been completed), the Wife's heirs, administrators, executors, conservators, and personal representatives shall quitclaim to the Husband the Wife's undivided one-half (½) ownership interest in and to the Stillwater Trace Property.  In furtherance of this stipulation, the Wife shall make and maintain a valid Last Will and Testament containing an irrevocable provision by which her legal and equitable interest in and to the Stillwater Trace Property is devised to the Husband in fee simple, subject only to any indebtedness secured thereby, which indebtedness shall be assumed and paid by the Husband.

6.   ZEBULON ROAD PROPERTIES.

(a)   Subject to the further terms and provisions of this Paragraph 6, the Husband shall have and enjoy the sole title to:

(1)   The improved real property located at and known as 1115 Zebulon Road, Griffin, Spalding County, Georgia, said property being more particularly described in Exhibit "6(a)(1)" to this Agreement, which description is incorporated herein by this reference;

(2)   The improved real property located at and known as 1117 Zebulon Road, Griffin, Spalding County, Georgia, said property being more particularly described in Exhibit "6(a)(2)" to this Agreement, which description is incorporated herein by this reference; and

(3)   The improved real property located at and known as 1119 Zebulon Road, Griffin, Spalding County, Georgia, said property being more particularly described in Exhibit "6(a)(2)" to this Agreement, which description is incorporated herein by this reference.

The properties identified in this subparagraph (a) are hereinafter collectively referred to as "the Zebulon Road Properties".

(b)   The Husband shall be responsible for, pay, and forever indemnify and hold the Wife harmless from:

(1)   The mortgage indebtedness to Bank of America (the last 4 digits of the account number being 0265) that is secured by the Zebulon Road Properties;

(2)   All utility expenses charged to the Zebulon Road Properties;

(3)   All city, county, and state ad valorem and other taxes assessed against the Zebulon Road Properties;

(4)    All premiums necessary to maintain a lender-required policy of comprehensive, hazard, and liability insurance on the Zebulon Road Properties;

(5)    All maintenance and repair expenses for the Zebulon Road Properties;

(6)    All claims, suits, and judgments for bodily injuries, wrongful death, and property damage arising out of the Husband's ownership, use, possession, occupancy, maintenance, and/or rental of the Zebulon Road Properties.

(c)    The Husband shall endeavor, in good faith, to procure the Wife's release from all liability for the mortgage indebtedness currently secured by the Zebulon Road Properties, whether by refinancing or otherwise. Except as provided in subparagraph (e) below to this Paragraph 6, the Husband shall not be required to sell the Zebulon Road Properties.

(d)    At such time as the Husband procures the Wife's release from all liability for the mortgage indebtedness currently secured by the Zebulon Road Properties, whether by refinancing or otherwise, the Wife shall:

(1)    Quitclaim to the Husband all of her right, title, and interest in and to the Zebulon Road Properties; and

(2)    Transfer and assign to the Husband all of her right, title, and interest in and to the policies of insurance covering the Zebulon Road Properties and their contents.

(e)    In the event that the Husband defaults on any of the obligations identified in subparagraph (b)(1), (b)(3), and (b)(4) above to this Paragraph 6 and fails to cure said default prior to the expiration of thirty (30) days from the date of the default, the Husband shall be compelled to market the Zebulon Road Properties for sale immediately with a licensed realtor